UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

|  |  |  |
|---|---|---|
| ROBERT D. MOSHER, as the Member Representative pursuant to the Agreement and Plan of Merger dated as of May 20, 2012, as amended, between and among DaVita Inc., Seismic Acquisition LLC, HealthCare Partners Holdings LLC, and Robert D. Mosher, as the Member Representative, | : : : : : : : : | |
|  | : | |
| Plaintiff, | : | 15-cv-7594 (JPO) |
|  | : | |
| - against - | : | |
|  | : | |
|  | : | |
| DAVITA HEALTHCARE PARTNERS INC., f/k/a DAVITA INC., | : : | |
|  | : | |
| Defendant. | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### DECLARATION OF JAY B. KASNER
### IN SUPPORT OF PLAINTIFF'S PETITION FOR AN
### AWARD OF ATTORNEYS' FEES AND COSTS PURSUANT TO THIS
### COURT'S MAY 23, 2016 OPINION AND ORDER AND 28 U.S.C. § 1447(c)

I, JAY B. KASNER, make this declaration pursuant to 28 U.S.C. § 1746.  I hereby declare as follows:

1.      I am a member of the bar of this Court and of the law firm of Skadden, Arps, Slate, Meagher & Flom LLP ("Skadden"), counsel to Plaintiff Robert B. Mosher, as the Member Representative pursuant to the Agreement and Plan of Merger (the "Merger Agreement") dated as of May 20, 2012, as amended, between and among DaVita Inc. ("DaVita"), Seismic Acquisition LLC, HealthCare Partners Holdings LLC ("HCP"), and Robert D. Mosher, as the Member Representative, in the above-captioned action.

2.      I respectfully submit this declaration in support of Plaintiff's Petition for an award of his attorneys' fees and costs pursuant to this Court's May 23, 2016 Opinion and

Order (ECF 31) and 28 U.S.C. § 1447(c) incurred as a result of DaVita's improper removal of this action.

## SCOPE OF THIS PETITION

3. As explained in greater detail below, this Petition seeks an award of $59,487.75 in attorneys' fees and $1,368.41 in costs incurred by Skadden.

4. This petition covers the period from September 25, 2015, the day DaVita filed its Notice of Removal, through and including November 2, 2015, the day on which Skadden concluded its research regarding the impact of DaVita's improper removal on deadlines for service of a complaint and discovery.

## FACTORS RELEVANT TO THE PETITION

5. In this action, Mr. Mosher, acting in his capacity as Member Representative on behalf of the former owners of HCP (the "Members"), seeks to recover damages caused by DaVita's breach of the Merger Agreement.

6. This case is a complicated commercial dispute involving a more than $600 million escrow established in connection with a $4.42 billion merger transaction, a substantial portion of which Mr. Mosher contends DaVita is improperly withholding from distribution to the Members based on its assertion of dozens of invalid and inflated indemnification claims. Skadden has substantial experience litigating these types of sophisticated, complex cases.

7. Mr. Mosher commenced this action on August 26, 2015 in the Supreme Court of the State of New York, New York County by serving a summons with notice.

8. Subsequently, DaVita took the position that this Court had subject matter jurisdiction over this action by virtue of what DaVita contended was complete diversity of citizenship between the parties.

9.      Before DaVita removed this action, Skadden, on behalf of Mr. Mosher, informed DaVita's counsel that, pursuant to controlling Second Circuit law, complete diversity was lacking because the Members include citizens who are not diverse from DaVita and that, consequently, no proper basis existed for DaVita to remove the action.

10.     On September 25, 2015, the final day for DaVita to demand a complaint or file a notice of appearance in state court, it – notwithstanding the warning that complete diversity was lacking – filed a Notice of Removal of the action to this Court on the asserted basis that this Court had subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) due to complete diversity between the parties.

11.     On October 6, 2015, Mr. Mosher moved this Court for an order remanding this action to the Supreme Court of the State of New York, New York County, on the grounds that complete diversity was lacking and this Court thus lacked subject matter jurisdiction.  Mr. Mosher also sought the costs and attorneys' fees he incurred in seeking remand on the grounds that DaVita lacked an objectively reasonable basis for removal.

12.     On May 23, 2016, this Court issued an Opinion and Order granting Plaintiff's October 6, 2015 motion in its entirety, including Plaintiff's request for an award of attorneys' fees and costs on the grounds that "no objectively reasonable basis" existed for DaVita to remove this action.  (ECF 31 at 3.)  The Court further ordered Plaintiff to submit a petition for attorneys' fees and costs.  This declaration is submitted in accordance with the Court's Order.

## PLAINTIFF'S ATTORNEYS' FEES AND COSTS

13.     Immediately after DaVita removed this action, I, along with certain other Skadden attorneys working on this matter, began preparing to move this Court for an order remanding the litigation to the state court.  Because of the complexity of this litigation and the

amount of money at stake, this work involved, among other things, (a) conducting a review of Second Circuit precedent relating to diversity jurisdiction, particularly in cases with representative plaintiffs, (b) researching the impact that removal and/or remand would have on the service of Plaintiff's complaint and discovery requests, research necessitated in part by DaVita's request in its notice of removal that the Court order Plaintiff to file a complaint in this Court, (c) researching the impact that removal and/or remand would have on those discovery requests already served by Plaintiff in state court and for which the time period for Defendant to respond had already lapsed, (d) drafting and revising the papers in support of the motion to remand, (e) reviewing DaVita's opposition brief, (f) drafting and revising a reply brief in further support of the remand motion, (g) researching Second Circuit precedent relating to awards of fees and costs following a successful remand motion, and (h) preparing the instant petition, declaration, and memorandum of law.  As noted below, the instant Petition does not seek to recover all of the fees and costs associated with some of these tasks.

14.     In addition,  following the removal of this action, Plaintiff was required to obtain competent evidence of citizenship from a non-diverse Member.  The non-diverse Member is not a party to the action – its interests are represented by the party plaintiff – and is itself is a limited liability partnership that, pursuant to controlling law, is deemed to have the citizenship of each of its partners.  This required Plaintiff to dig two layers deep to confirm the LLP Member's citizenship.   Moreover, the non-diverse Member was represented by its own counsel, with whom Skadden needed to coordinate in order to secure the evidence needed to establish non-diversity.  This led us to expend significant effort that would have been unnecessary had the action remained in state court.

15.     The services performed in connection with the removal and remand of this action were reasonable and necessary to protect the client's interests and to achieve the desired result.

16.     With regard to Skadden's work on this case, Plaintiff seeks a total award of $60,856.16 in fees and costs.  For the Court's convenience, a summary of the fees and expenses for which reimbursement is sought is annexed hereto as Exhibit A.

17.     All Skadden attorneys regularly record the time they spend working on client matters.  Each timekeeper is instructed to record his or her time through contemporaneous diary records.  These diary records include the date of each entry, the amount of time spent (recorded in segments of one-tenth of an hour), and a description of the work performed.  Each lawyer's contemporaneous diary records are reviewed for accuracy by the lawyer and then entered directly into the firm's computerized client accounting system.

18.     Each matter Skadden handles for a client is assigned a client billing number.  When Skadden attorneys began working on Mr. Mosher's remand motion, Skadden generated a new billing number dedicated to work performed as a result of the removal, as opposed to work performed in connection with the litigation more generally.  Skadden attorneys have been instructed to use that new billing number for, and only for, work performed as a consequence of DaVita's removal.  I endeavored to ensure that all tasks were performed efficiently and without unnecessary duplication.  Where appropriate, partners and more senior associates delegated tasks to more junior associates working under appropriate supervision.

19.     Attached as Exhibit B is a time detail, a computer-generated chart that shows the work performed by Skadden attorneys as a result of the removal for which Mr. Mosher seeks reimbursement, between September 25, 2015 and November 2, 2015.  Exhibit B

indicates that the total amount billed to this matter for which reimbursement is sought at Skadden's customary rates for this matter was $59,487.75. These fees were actually billed to and paid by Plaintiff.

20.     Attached as Exhibit C is a disbursement summary listing legal research costs for which reimbursement is sought. These costs were incurred at the customary rate for the Westlaw online research service and were actually billed to and paid by Plaintiff. Exhibit C indicates that the disbursements for which reimbursement is sought totaled $1,368.41. These costs were reasonably and necessary incurred in connection with the removal and remand of this action and have been deemed compensable in this District.

21.     Added together, the totals from Exhibits B and C amount to $60,856.16 in fees and costs at the Skadden rates actually billed to and paid by Plaintiff in this matter.

22.     Plaintiff does not seek through this Petition all of the fees and costs incurred as a consequence of DaVita's improper removal of this action. In fact, the actual fees and costs attributable to the improper removal were higher than those sought here. Although those higher fees and costs were in our estimation reasonably and necessarily incurred to produce work consistent with Skadden's high standards – a conclusion we respectfully submit is amply supported by the fact that the Court awarded Plaintiff all the relief he sought on his motion to remand – in the interest of making a conservative application for fees and costs, Plaintiff has determined to seek only those fees and costs listed in Exhibits B and C.

## ATTORNEY RATES

23.     Skadden is an international law firm, headquartered in New York City, with over 1,700 attorneys practicing in 23 offices worldwide. Skadden's practice is diverse and sophisticated, and it endeavors to service its clients in a cost-efficient manner without sacrificing

6

the quality of representation provided.  Over 700 attorneys, including all attorneys named in this application, practice in Skadden's New York office.

24.     According to public sources, Skadden's rates are consistent with the prevailing market rates charged by New York City firms of similar reputation and skill.

25.     Annexed hereto as Exhibit D is a true and correct copy of a chart of the results of a 2014 National Law Journal billing survey, which collected the billing rates for partners and associates at some of the nation's largest law firms.  The chart indicates that, at the time of the survey several years ago, large firms based in New York, such as Skadden, frequently commanded an average of close to or in excess of $1,000 for partners and an average of close to or in excess of $600 for associates.  According to this survey, as of 2014, the rates applicable to Morrison & Foerster, the firm representing DaVita in this matter, were as high as $1,195 per hour for partners and $725 per hour for associates.  The chart thus makes apparent that Skadden's billing rates for both partners and associates fall within the range of rates charged by firms of comparable size, reputation, skill, and location.

26.     Annexed hereto as Exhibit E is a true and correct copy of a May 2014 article from Law360 indicating that top litigators "now command . . . $1,500  per hour" according to a report jointly created by Law360 and BTI Consulting Group.  Billing rate averages for litigators at large firms nationwide – not specific to New York – were $745 and $403 for senior partners and associates, respectively.  Rates for firms based in New York, and particularly Skadden's peer firms, are decidedly higher.  (See, e.g., Ex. D.)

27.     Annexed hereto as Exhibit F is a February 8, 2016 article from the ABA Journal indicating that "rates have risen steadily at many of the nation's" large law firms in the

past decade and confirming that some partner billing rates have approached or exceeded $1,500 per hour.

28.     As set forth in the accompanying memorandum of law, courts in this District have regularly awarded fees at prevailing market rates to large, international law firms of Skadden's caliber working on complex civil litigation matters.

29.     For the Court's convenience, the chart below shows, for each lawyer for whose work compensation is sought in this application, his or her hourly billing rate for this matter during the time he or she worked on the remand motion or other tasks made necessary by the removal; the number of hours for which compensation is sought; and the amount of compensation sought:

| Attorney and Position | Time Period | Hourly Rate | Hours Requested | Compensation Sought |
|---|---|---|---|---|
| Jay B. Kasner, Partner | 9/28/2015–10/23/2015 | $1215 | 2.4 | $2,916.00 |
| Joseph N. Sacca, Partner | 9/25/2015–10/23/2015 | $1134 | 20.4 | $23,133.60 |
| Sarah Bender-Nash, Associate, Class of 2006 | 9/30/2015–10/23/2015 | $783 | 6.8 | $5,324.40 |
| Bradley E. Honigman, Associate, Class of 2012 | 9/28/2015–11/2/2015 | $661.50 | 42.5 | $28,113.75 |

30.     I am a 1980 graduate of Boston University School of Law.  I joined Skadden in 1980 and became a member of the firm in 1988.  I am currently the head of Skadden's national securities litigation practice.  In my practice, I routinely handle securities, corporate and takeover litigation, and general commercial matters of high complexity in both federal and state courts.

31.     Mr. Sacca is a 1993 graduate of Temple University School of Law.  He is a former law clerk to the Honorable Clarence C. Newcomer of the United States District Court for the Eastern District of Pennsylvania.  He joined Skadden in 1995 and became a member of the firm in 2002.  He routinely represents clients in complex securities, corporate, and commercial disputes in both federal and state courts.

32.     Ms. Bender-Nash is a litigation associate and member of the class of 2006.  She is a graduate of University of Michigan Law School.  She is a former law clerk to the Honorable Laura Taylor Swain of the United States District Court for the Southern District of New York.  She routinely represents clients in complex securities, corporate, and commercial disputes in both federal and state courts.

33.     Mr. Honigman is a litigation associate and a member of the class of 2012.  He is a graduate of The University of Arizona College of Law.  He is a former law clerk to the Honorable Carlos T. Bea of the United States Court of Appeals for the Ninth Circuit.  He routinely represents clients in complex securities, corporate, and commercial disputes in both federal and state courts.

I declare under penalty of perjury that the foregoing is true and correct.

Dated:       June 6, 2016
             New York, New York

             _____
             Jay B. Kasner